**In Re Anonymous No. 53 D.B. 83**

Disciplinary Board Docket No. 53 B.D. 83.

MCGINLEY, *Member,* February 6, 1984—The factual matters giving rise to the captioned proceeding have not been disputed by the parties in the briefs filed in this matter or in the argument before a panel of members of the Disciplinary Board of the Supreme Court of Pennsylvania. The extensive factual findings of the hearing committee are set forth in schedule "A", attached hereto and made a part hereof. The hearing committee is to be commended for its thorough analysis of the rather confusing facts of this case.

The salient factors are as follows:

Respondent is a 69 year old attorney who is employed full time as an assistant public defender. He neither engages in private practice nor has any clients. He works under the supervision of the public defender of the county in which he resides, and appears, principally, at preliminary hearings.

This proceeding was commenced by a complaint filed by the administratrix of an estate for which respondent was counsel.

The hearing committee's discussion of the events applicable to the complaint is clear and concise. In pertinent part, the hearing committee found:

"[A] died in January, 1965, survived by issue of two sisters who predeceased her, viz., [B] and [C]. Some of her heirs at law were a niece, [D] (daughter of [C]); a nephew, [E] (Jr.) (son of [C]); a niece, [F] (daughter of [C]). The rest of her heirs at law were

the decedents of another two sons and two daughters of [C], all four of whom predeceased [A].

At her death, [A] owned the family home on [    ] Street in [    ], Pa., although she was a resident of Ohio. The home had been occupied for years by the [C] family of her deceased sister, and after [A's] death, [G] and [E's] widow, [H], continued to reside there.

[A] died leaving a holographic will in which she directed her [    ] Street property to be sold, and the residue of her estate to be distributed to [D], [G], [F] and [E] (Jr.). The [D] brought a copy of the will to respondent who corresponded with an attorney-at-law in the State of Ohio, [A's] domicile at death. Apparently it was decided to probate the will in [    ] County, Pa., the situs of her [    ] Street property, which was the only estate asset in Pennsylvania. In 1965 respondent personally took the original will to the office of the Register of Wills of [    ] County and left it for probate. The [C] family continued to reside in the [    ] Street property, and nothing further was done by respondent in settlement of this estate until the [C] advertised the property for sale in 1978 and the [I] agreed to purchase it.

Meanwhile, on December 31, 1965, [F] died, unmarried and intestate, and [G] was appointed administratrix of her estate, employing respondent to represent her in that capacity. Apparently her only estate asset was her interest in the residue of [A's] estate. Nothing further was done by respondent in the settlement of this estate.

On February 10, 1967, [E] (Jr.) died, intestate, and his widow, [H] (complainant in this case) was appointed administratrix of his estate, employing re-

spondent to represent her in that capacity. Apparently his only estate asset was his interest in the residue of [A's] estate. Nothing further was done by respondent in the settlement of his estate.

In 1977 or 1978, [G] and [H], who were still living in the [    ] Street property, decided to sell that property, and they retained respondent to represent them in the sale to the [I]. The purchasers were represented by attorney [J] whose title search revealed the inheritance tax liens resulting from the deaths of [A], [F] and [E], as well as the absence of an estate of record for [A]. At that time respondent first discovered that the [A] will, which he had left with the Register of Wills in 1965, had not been admitted to probate and was, in fact, lost. In spite of this, respondent advised [J] that [A] had died intestate and respondent furnished [J] with the information for a deed recital to that effect, naming her heirs at law as [E], [F], [G], [D], [K], [L], [M], [N] and [O]. Respondent was unaware that another niece of [A], viz., [P] (who predeceased her aunt) had a son, [Q], who also predeceased [A], but who was survived by five children. These children, or their issue, were also heirs at law of [A] if she had died intestate, but they did not join in any deed of conveyance to the [I]. Respondent gave this erroneous information to [J] in order to expedite the sale of the [    ] Street property, thinking that all heirs at law would join in the conveyance, and [J] certified the real estate record title on the basis of respondent's information.

At the closing of the sale, [J] required $10,000 of the sale price to be retained in a non-interest bearing account at First Federal to insure payment of the inheritance tax liens in all three of the estates. Respondent retained $2,400 for his fees in those

estates and promptly divided the remaining net proceeds of the sale equally between [G] and [H], advising [H] that this distribution was being made as a result of a family settlement among the [C] heirs. Apparently respondent did not have any written family settlement agreement to that effect. At the same time, respondent advised [H] of the $10,000 withheld in escrow. That sum is still held by First Federal in spite of Attorney [J's] reminder to respondent in June, 1980.

From 1978 to 1983, [H], who was then residing in Hawaii, made inquiries of respondent about the escrowed funds. On several occasions, [K], her niece, asked respondent to contact her aunt [H] and verified the address in Hawaii. In response, respondent assured [H] that he was working on the estate and would soon complete them. After October 11, 1978, he did not respond at all to her inquiries, and she finally filed the instant complaint with the Disciplinary Board on September 16, 1983.

Meanwhile, on September 6, 1978, [G] died, unmarried and testate. Her will was probated in [  ] County and letters testamentary were granted to [B], her niece, who was represented in that capacity by Attorney [S]. Although respondent was aware of [R's] appointment as executrix of the estate, he never gave information in writing to her or to Attorney [S] concerning [G's] interest in the $10,000 in escrow, although he did verbally acknowledge to [R] that there was an escrow fund. Consequently, [R] did not include this asset in her inventory of assets of [G].

Respondent did not do anything further in the settlement of the estates of [A], [F] and [E] until hearing before this hearing committee on April 13, 1984, when he submitted into evidence a proposed

Pennsylvania Inheritance Tax Return in each estate, showing no tax due in either of the [C] estates and $584.40 tax due in the [A] estate. His testimony indicated that these returns might need correction or revision before they are filed.

On the basis of the foregoing, the hearing committee found that respondent violated the following Disciplinary Rules. The board agrees with the following findings of violations of the Disciplinary Board Rules.

Disciplinary Rule 1-102(A)(4) which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation. The factual summary of this case establishes beyond any doubt that respondent violated Disciplinary Board Rule 1-102(A)(4). The intentional, overt misrepresentations made by respondent in this case call for such a finding. He made repeated, material misrepresentations to his client and parties dealing with the estates.

Disciplinary Rule 6-101(A)(3) proscribes a lawyer from neglecting a legal matter entrusted to him. The record in this case establishes that respondent, without any justification or excuse, neglected to timely complete the administration of the estates of [A], [F] and [E]. Respondent has offered no explanation of any merit for this neglect or in mitigation thereof.

Disciplinary Rule 7-101(A)(2) prohibits a lawyer from intentionally failing to carry out a contract of employment entered into with a client for professional services. The record in the case justified the hearing committee in finding violation of this section. Respondent received legal fees of $800 in each estate; he ignored the many requests from family members about these matters.

Disciplinary Rule 7-101(A)(3) provides that a lawyer shall not prejudice or damage his client during the course of a professional service. Respondent, by his neglect and affirmative misrepresentation, has exposed his clients to potential liability for breach of warranty of title, and for subcharges for the breach of duties imposed on administrators of estates.

Disciplinary Rule 7-102(A)(5) provides that a lawyer shall not knowingly make a false statement of law or fact in the representation of a client. Respondent made material misrepresentations of fact to [J] as well as his client.

The hearing committee has recommended public censure and probation. With this recommendation, the Disciplinary Board concurs in part, and upon condition.

Respondent has a history of neglect and has received informal admonitions four times during the period from March 25, 1975 through September 18, 1981.

While respondent demonstrates a disturbing history of recidivism in the neglect of private matters, he functions adequately in his performance of his public duty, which performance is of course subject to the scrutiny of his superior.

When confronted with the charges in the captioned action, respondent engaged able counsel to defend him in this action and to conclude the affairs of the estates involved. At argument before the panel of the board, Disciplinary Counsel agreed that substantial progress has been made to finalize the adversely affected estates, to cure any defects in title and to discharge any liability for failure to pay inheritance taxes.

Respondent has no alcohol or drug problem. He has served in positions of trust and responsibility while a member of the bar and the armed services. He is at an age where gainful employment in a field other than that in which he is engaged would be unlikely.

If respondent were engaged in the private practice of law, discipline more severe than that recommended would be appropriate. However, he indicates no intent to resume private practice. Accordingly, the Disciplinary Board recommends that public censure be administered by the justices of the Supreme Court of Pennsylvania upon condition; the condition is that respondent not engage in the private practice of law except under the direct and immediate supervision of another attorney admitted to practice and maintaining a practice in the Commonwealth of Pennsylvania. The Disciplinary Board further recommends that the costs be paid by respondent.

## ORDER

NIX, *C.J.*, And now, this February 28, 1985, upon consideration of the recommendation of the Disciplinary Board dated February 6, 1985, it is ordered that [respondent] be subjected to public censure by the Supreme Court at the session of court commencing September 16, 1985, in Pittsburgh. It is further ordered that respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice McDermott did not participate in the consideration or decision of this matter.

Mr. Justice Larsen dissents and would enter an order of suspension.